(16 Misc. Rep. 515)

## In re LAZELLE'S ESTATE.

### (Surrogate's Court, Chautauqua County. April, 1896.)

1. ATTORNEY AND CLIENT — LIEN OF DEFENDANT'S ATTORNEY—JUDGMENT FOR COSTS.

   Code Civ. Proc. § 66, which provides that "the attorney who appears for a party has a lien on his client's cause of action or counterclaim, which attaches to a * * * judgment in his client's favor," does not restrict the previously existing right of an attorney to a lien on a judgment rendered in favor of his client; and therefore defendant's attorney has a lien on a judgment in favor of defendant for costs, though the answer in the action contained no counterclaim.

2. EXECUTORS AND ADMINISTRATORS—EXECUTION AGAINST.

   Under Code Civ. Proc. § 2552, providing that an order permitting an execution to issue against an executor is "conclusive evidence that there are sufficient assets in his hands to satisfy the sum," the sufficiency of the assets must appear on an application for leave to issue execution, and it is not enough to show merely that the executor has assets in his hands.

3. SAME—PROPERTY SUBJECT TO LEVY.

   Real estate purchased by an executor on a sale under a foreclosure of a mortgage held by him as executor is not an asset of the estate against which execution can issue (Code Civ. Proc. § 1371), though it is an asset so far as the executor will be required to account therefor.

4. SAME—EFFECT OF UNDERTAKING GIVEN BY EXECUTOR.

   Leave to issue execution against an executor on a judgment in favor of defendant for costs in an action of replevin brought by the executor will not be granted unless it is shown that the executor has sufficient assets in his hands to satisfy the same, as required by Code Civ. Proc. § 2552, though the executor gave an undertaking in the action, on which defendant cannot sue until he has had execution on his judgment returned unsatisfied.

Application by A. C. Pickard for leave to issue execution on a judgment for $311.52, costs, rendered in an action of replevin brought by one Joshua Pickard against Alonzo Langworthy, as sole surviving executor of Hiram Lazelle, deceased. Denied.

A. C. Pickard, in pro. per.

Obed Edson, for respondent.

WOODBURY, S. Various objections were raised during the course of the proceeding, on the part of the executor, touching the legality and regularity of the proceedings. These objections were ruled upon and disposed of at that time. In view of the disposition which, we think, should be made of this application, it becomes unnecessary for us to again consider any of these objections, as to legality and regularity, with one exception. Counsel for the executor urged upon the hearing, and still urges, that

the petitioner has no lien upon the judgment in question, as attorney, for the services rendered and performed and disbursements paid by him in the action which resulted in the judgment, and consequently has no standing in this court upon his application, made in his own name and on his own behalf, for leave to issue execution upon the judgment to collect his costs and disbursements. The answer in the action contained no counterclaim; and, this being so, it is urged that the attorney never acquired or had, and does not have, a lien upon the judgment entered therein. In support of this contention, section 66 of the Code of Civil Procedure, and several decisions by the courts of this state, are cited. The section of the Code referred to provides that "the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a * * * judgment in his client's favor, * * * and cannot be affected by any settlement between the parties before or after judgment." The first impression created by the reading of these authorities would seem to sustain the position of counsel for the executor, but, upon closer examination, it seems very clear to us that they have no application to this case. These cases arose upon a state of facts where the client had settled or discontinued the action, before judgment, without the knowledge of the attorney; and, in proceedings on the part of the attorney to enforce his lien, the courts held that, to entitle the attorney to enforce his lien, the pleadings on the part of his client must set forth a cause of action or counterclaim. The case before us is clearly distinguishable from the cases cited, in that in this case judgment has been entered, and the rights of parties have thereby become fixed. The lien of the attorney in this case exists, not by virtue of this statute, but under the rule of law applicable to attorney's liens recognized and enforced by the courts of this state for the protection of attorneys. In fact, the attorney, in cases where judgments are recovered for costs only, is in equity regarded as the owner of the judgment until he has been paid for his services. In re Bailey, 31 Hun, 608. Section 66 of the Code of Civil Procedure was evidently not intended to abridge the attorney's right of lien, which theretofore existed, upon the judgment recovered for his client, but was intended to enlarge that right by making the lien attach from the commencement of the action,—where his pleadings set forth a cause of action or counterclaim, and to prevent the client from defeating the lien of his attorney by a settlement of the action with the adverse party before judgment. For the reasons stated, we hold that the attorney in this case had a lien upon the judgment in question, and has the right to make this application.

The question now recurs, has a proper case been made to warrant the granting of leave to issue execution? The judgment is against the executor in his representative capacity. The application for leave to issue execution against him in such capacity is made to the surrogate, pursuant to the provisions of sections 1825 and 1826 of the Code of Civil Procedure. The judgment does not bind, nor is it a lien upon, any real estate of the decedent. Code Civ. Proc.

§ 1823. The execution, if issued, must substantially require the sheriff to satisfy the judgment out of the personal property in the hands of the executor belonging to the estate of his testator. Code Civ. Proc. § 1371. Again, we find, by reference to section 2552 of the Code of Civil Procedure, that "an order permitting a judgment creditor to issue an execution against an executor * * * is, except upon an appeal therefrom, conclusive evidence that there are sufficient assets in his hands to satisfy the sum * * * for which the order permits the execution to issue." The general scheme of our statutes is to bring the administration and distribution of the estates of deceased persons, so far as personal, and to some extent real, property is concerned, directly under the supervision of the surrogate, through officers appointed for the purpose, over whom the surrogate is given supervision and control. The office which the particular provisions to which we have referred are intended to perform in this general scheme is to prevent one creditor from obtaining an undue preference over others, and to prevent creditors from interfering with the orderly administration of the estate, which might tend to the injury of the rights of others interested therein, unless the surrogate shall first find, upon investigation, that the estate is in proper condition as respects assets and the administration thereof, and a proper case is presented to warrant the issuing of an execution. These various provisions of the statute must be taken and construed together in determining whether, upon application therefor, a proper case has been made, and the estate is in proper condition as respects assets, and the administration thereof, to authorize the issuing of an execution upon a judgment recovered against an executor or administrator in his representative capacity. Taken together, these different sections clearly indicate what facts should be found to exist with respect to these matters before this authority should be granted. After a careful consideration and study of these provisions of the statute, we are convinced that, before authority should be granted to issue execution upon the judgment in question, it must be clearly made to appear that the executor has assets of the estate in his hands which are applicable to its payment. The mere fact that he has assets in his hands is not sufficient. It must be further made to appear that these assets are available and applicable to the payment of the judgment. The executor has not rendered, neither has he been asked to render, an account of his proceedings for the purpose of satisfying our minds upon these questions. The burden rests upon the petitioner to satisfy the surrogate that the proper conditions exist to warrant the granting of the order authorizing the execution to issue. The petitioner has attempted to meet this burden by evidence, without calling upon the executor to account.

It appears that on the 11th day of May, 1885, a decree was made and entered in this court judicially settling the accounts of the executor. It found in the hands of the executor certain moneys, which were thereby charged to him, and which he was directed to pay out and expend, excepting the sum of $173.40, to persons

therein designated, and for the purposes therein specified, which we must assume were paid out and expended as directed. It also found in his hands—and charged him with—additional personal property, amounting to the sum of $10,000, which he was directed to convert into money; and, together with the said sum of $173.40, distribute pro rata, according to the provisions of the will of the testator, among the eight legatees, subject to proper allowances for his costs and disbursements to be made by this court. Thereafter, and in the years 1885 and 1886, the executor converted all of the assets of the estate constituting the fund of $10,000, and paid the same to the legatees entitled thereto, pursuant to the terms of the said decree, excepting a mortgage executed by Jarvis Pickard to Alonzo Langworthy (which constituted a part of the decedent's estate in his hands), and upon which there was unpaid the sum of $1,400 and accumulated interest. This mortgage was subsequently foreclosed by the executor, and the premises sold thereunder. Upon this sale the executor became the purchaser of these premises, and took a deed thereof unto himself, as executor, for the benefit and protection of the estate of his testator. He entered into possession of the premises under his deed. Subsequent to this sale, the premises were again sold, pursuant to a judgment recovered in an action for the foreclosure of a mortgage executed by the same mortgagor to one Phebe Ann Pickard, which mortgage was subsequent in point of execution and delivery to the mortgage foreclosed by the executor. Upon this sale the said Phebe Ann Pickard (Stewart) became the purchaser, took a deed of the premises, and after some lapse of time, and in the year 1891 or 1892, entered into possession of the premises, and has ever since held the same, claiming title thereto under her deed of conveyance adversely to the executor. In November, 1895, an action was commenced in the supreme court, by this executor against the said Phebe Ann Stewart, to recover possession of the premises, which action is still pending. The petitioner herein is the attorney for the defendant in that action.

It is urged by the petitioner that these premises constitute an asset of the estate against which an execution can issue, and out of which it can be collected. In this position we cannot concur. It may be stated in this connection that, so far as the question of value is concerned, we are of the opinion that the premises are worth an amount sufficient to authorize the issuing of an execution for the full amount asked. The premises having been purchased by the executor in the manner stated leaves no doubt in our mind that they constitute an asset of the estate, for which the executor will be required to account at the proper time, and in the proper and usual proceeding; but it by no means follows that the premises may be sold upon execution issued upon this judgment. While, under the doctrine of equitable conversion, the premises are to be regarded as personal estate, for which the executor must render an account, they are, nevertheless, real estate as regards formalities of sale and transfer. In this position the petitioner virtually concurs, for upon the argument he conceded that, the premises being in the actual adverse possession of another, claim-

ing title under a deed of conveyance, the champerty act, which relates solely to real property, intervenes to prevent a conveyance by the executor. The judgment in question is not a lien upon these premises, and it is difficult to see how the petitioner would be able to make a sale of the same under an execution issued thereon.

We do not desire, however, to rest our decision upon these grounds. The difficulty in this case is that the premises, as an asset, are not in the hands of the executor. They are out of his hands, and out of his possession and control; and that, so far as disclosed by the evidence, without such fault or negligence on his part as would charge him with their value. He has endeavored to reduce them to possession. Until he succeeds in this, it is conceded that he cannot sell them. The premises, being out of the hands of the executor, are not available at this time for executional purposes. To authorize execution to issue, we must find assets in the executor's hands with which he may pay the judgment. The granting of an order is conclusive upon that question, except upon an appeal therefrom. There should be charged to the executor, in the determination of the question here presented, the $173.40, charged to him by the surrogate's decree, and to this should be added $136.20, received by him from the premises aforesaid while he was in possession, making altogether $309.60. The evidence discloses the fact that the executor has paid from this amount upward of $180 for expenses and disbursements in the execution of his trust; that he has received no commissions upon the fund of $10,000; and that he has incurred expenses for attorney's services and counsel, which he will be entitled to charge against the estate upon his accounting, amounting to several hundred dollars. The evidence discloses the fact that some losses have been sustained by the estate, growing out of the management of the farm or premises, while said premises were under the management and in the possession of the executor. These losses are not large in the aggregate. It may be claimed upon an accounting that the executor should be charged with some or all of these losses, but the evidence does not disclose a state of facts which will warrant us in charging him therewith in this proceeding. It follows from what has been said that there are no assets in the hands of the executor applicable to the payment of the judgment.

It is claimed by petitioner that inasmuch as the executor gave an undertaking in the action which resulted in the judgment in question, which cannot be prosecuted until the return of an execution wholly or partly unsatisfied, he is entitled to the execution in this case, irrespective of the question of assets, to enable him to maintain an action upon such undertaking. We do not concur with the petitioner in this position, as we believe the only questions we are called upon to determine in this proceeding are the questions of assets, and whether they are applicable and available to the payment of the judgment. For the reasons stated, we think the application for leave to issue execution should be denied, and an order may accordingly enter, without costs to either party as against the other.

Application denied, without costs.